# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JINGJING LIU**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**ALEJANDRO MAYORKAS**, Secretary,<br>U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 20-cv-654 (CRC) |

## <u>MEMORANDUM OPINION</u>

This case is about delays in the process of seeking a visa through the EB-5 immigrant investor program.  Six investors allege that U.S. Citizenship and Immigration Services ("USCIS") has intentionally slowed its processing of petitions by EB-5 hopefuls.  Since filing their Complaint, five of those investors have had their petitions approved, mooting their claims. The government moves to dismiss the Complaint in full.

The Court will decline to dismiss the case as it relates to Shivansh Amish Thakrar, the sole remaining plaintiff with live claims.  Mr. Thakrar has plausibly alleged that the delay in adjudicating his petition is a result of improper foot-dragging by USCIS and cannot be explained by any neutral rule of reason.  The government will be entitled to test these allegations on summary judgment, but it cannot defeat them at the pleading stage by relying on USCIS publications that are extraneous to the Complaint.

## I.   Background

Plaintiffs are six foreign-national investors who hope to become lawful permanent residents of the United States through the EB-5 visa program.  Compl. ¶¶ 1-8.  Between November 2015 and December 2018, each plaintiff filed a Form I-526 Immigrant Petition.  <u>Id.</u>

¶¶ 3-8.  An approved I-526 petition is a prerequisite to obtaining an EB-5 visa.  Id. ¶ 18; see also

Chang v. USCIS, 289 F. Supp. 3d 177, 179 (D.D.C. 2018).

Congress has expressed its "sense . . . that the processing of an immigration benefit

application should be completed not later than 180 days after the initial filing of the

application[.]"  8 U.S.C. §1571(b).  However, USCIS had not adjudicated plaintiffs' I-526

petitions as of March 2020, when the Complaint was filed.  Compl. ¶ 1.  Plaintiffs contend that

the adjudications of their I-526 petitions were "willfully, and unreasonably," delayed.  Id. ¶ 90.

More specifically, they allege that "USCIS has arbitrarily and intentionally increased EB-5

processing times . . . by significantly reducing the number of petitions adjudicated to a level that

is below 20% of adjudications in prior years."  Id. ¶ 62.  According to the Complaint, "USCIS

processing times for EB-5 petitions have increased over 200% since 2015 and over 100% since

the beginning of 2019 . . . despite a decrease in petition receipts[.]"  Id.  Plaintiffs further allege

that this slowdown is "consistent with" recent changes to USCIS's mission statement, such as

eliminating its references to "granting immigration and citizenship benefits" and to the U.S. as a

"nation of immigrants."  Id. ¶ 68.

When plaintiffs submitted their I-526 petitions, USCIS had a publicly advertised "first-in-

first-out" system for prioritizing those petitions, although plaintiffs allege that in practice, the

agency took some petitions out of order.  Compl. ¶¶ 58, 78; see also Thakker v. Renaud, No. 20-

cv-1133 (CKK), 2021 WL 1092269, at *3 (D.D.C. Mar. 22, 2021).  In March 2020, USCIS

adopted a new approach to prioritizing petitions.  According to USCIS, the new system

prioritizes "petitions from nationals of countries where visas are immediately available, or soon

available based on the per-country limits."  Thakker, 2021 WL 1092269, at *3 (internal

quotation marks omitted).  "Once a petition is designated for priority, it goes through the 'first-

in, first-out' process among other similarly-designated visas, and once it is approved by USCIS, it is sent to the National Visa Center for processing."  Id.

A few days before USCIS formally unveiled its modified prioritization system, plaintiffs filed this lawsuit against USCIS and three federal officials, including the then-Acting Secretary of the Department of Homeland Security.[1]  The Complaint seeks to compel USCIS to adjudicate their I-526 petitions within 30 days.  Compl. ¶ 110.  While this case has been pending, USCIS approved the petitions of five plaintiffs: Jingjing Liu, Junning You, Mahesh Erukulla, Punit Choudhari, and Supriya Chaparala.  Mot. to Dismiss Exhs. 1-3; Joint Status Report, ECF No. 12; Notice of Approval, ECF No. 15.  The sole plaintiff whose petition has not been adjudicated is Mr. Thakrar, a citizen of India who filed his petition on December 21, 2018.  Compl. ¶ 7.

The government has moved to dismiss the Complaint, arguing that Thakrar fails to state a plausible claim for unreasonable delay and that the other plaintiffs' claims are moot.  The motion is fully briefed, and the Court heard oral argument on April 12, 2021.

## II.   Legal Standards

### A.   Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) requires the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  In analyzing a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must "accept as true all of the complaint's factual allegations and draw all reasonable

---

[1] The current Secretary, Alejandro Mayorkas, is automatically substituted as the first-named defendant under Federal Rule of Civil Procedure 25(d).

inferences in favor of the plaintiffs," but need not "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations." Owens v. BNP Paribas, S.A., 897 F.3d 266, 272 (D.C. Cir. 2018). In addition to the allegations within the four corners of the complaint, the Court may consider "documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).

      B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court must dismiss any claim over which it lacks subject matter jurisdiction. Auster v. Ghana Airways Ltd., 514 F.3d 44, 48 (D.C. Cir. 2008). The Court loses subject matter jurisdiction over a claim that becomes moot during the litigation. See Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III— when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (internal quotation marks omitted).

**III.  Analysis**

The Court begins with the five plaintiffs whose I-526 petitions have been approved. There appears to be no dispute that these plaintiffs' claims are moot. At oral argument, plaintiffs' counsel explained that before applying for an EB-5 visa, each plaintiff needs an official, paper copy of USCIS's notice that the I-526 petition was approved—no more and no less. Hearing Tr. at 6-7. According to a status report submitted by the government after oral argument, plaintiffs' counsel has since confirmed that all plaintiffs except Thakrar have received

"final, official approval letters regarding their I-526 Petitions." Status Report, ECF No. 22. The Court will therefore dismiss these plaintiffs' claims as moot.

Thakrar is another matter. Because his petition has not yet been adjudicated, his claims are not moot, and the Court must determine whether he has stated a plausible claim for relief. Thakrar seeks "a Writ of Mandamus and/or an order under the [Administrative Procedure Act]," 5 U.S.C. § 706(1), compelling the government to adjudicate his I-526 petition within 30 days. Compl. ¶ 110. "The standard by which the Court reviews agency 'inaction' under the Mandamus Act, 28 U.S.C. § 1361, is the same standard applied to claims under § 706(1) of the APA." Desai v. USCIS, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *8 (D.D.C. Mar. 21, 2021). Specifically, the reasonableness of a delay in agency adjudication is judged by the six-factor test set out in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"). The TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 80 (citations omitted)).

Under TRAC and its progeny, the ultimate determination of whether a delay is unreasonable is "a fact intensive inquiry" that may require a substantial evidentiary record. Nio v. DHS, 270 F. Supp. 3d 49, 66 (D.D.C. 2017). Nevertheless, the TRAC factors provide a useful

framework even on a motion to dismiss.  "In applying these factors, the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay."  Ghadami v. DHS, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020); see also Didban v. Pompeo, 435 F. Supp. 3d 168, 175-77 (D.D.C. 2020) (Cooper, J.) (applying TRAC factors in deciding motion to dismiss).

As the D.C. Circuit has explained, the first TRAC factor is the "most important."  In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008).  Indeed, only the first TRAC factor is phrased as a categorical command: "the time agencies take to make decisions *must* be governed by a 'rule of reason.'"  In re United Mine Workers, 190 F.3d at 549 (emphasis added).  A delay in adjudication caused by the agency's failure to follow any rule of reason is, almost tautologically, unreasonable.

Here, the Complaint alleges facts that, if proven, would support a plausible inference that no rule of reason governs USCIS's processing times for I-526 petitions.  Plaintiffs contend that USCIS has "arbitrarily and intentionally increased EB-5 processing times . . . by significantly reducing the number of petitions adjudicated to a level that is below 20% of adjudications in prior years."  Compl. ¶ 62.  They support this claim with specific allegations of a significant, measurable, and unexplained drop-off in processing rates.  See, e.g., id. ("USCIS processing times for EB-5 petitions have increased over 200% since 2015 and over 100% since the beginning of 2019 . . . despite a decrease in petition receipts[.]"); id. ¶ 66 ("In the third quarter of FY 2019, USCIS processed only 579 I-526 petitions, or roughly 15% of what it was processing in the comparable period of FY 2018.").  Further, the Complaint provides some support for the inference that this trend was a result of USCIS's policy agenda, rather than an accident or other

innocent circumstances.  Plaintiffs allege that, over the same period when USCIS was decreasing

its processing speed for EB-5 applicants, the agency also slowed its processing of applications

for other immigration benefits and amended its mission statement, deleting references to

"granting immigration and citizenship benefits" and to the U.S. as a "nation of immigrants."  Id.

¶¶ 68-69.  These allegations, taken as true, may not conclusively prove that USCIS is

intentionally dragging its feet on adjudicating I-526 petitions, but they suffice to "nudge[]" the

theory "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

      Unsurprisingly, the government does not argue that purposefully slow-walking I-526

petitions would be consistent with USCIS's obligation to ensure that processing times are

governed by a rule of reason.  Instead, it seeks to present a competing explanation for the wait

times for plaintiffs' petitions.  Citing a document posted on USCIS's website, the government

contends that "USCIS's approach to managing I-526 petition inventory prioritizes petitions for

individuals from countries where visas are currently available or soon to be available," thus

"allow[ing] qualified EB-5 petitioners from traditionally underrepresented countries to have their

petitions approved in a more timely fashion."  Mem. in Support of Mot. to Dismiss at 14.

Therefore, the government argues, "the time Defendants take to adjudicate I-526 petitions is

governed by a rule of reason."  Id.

      This argument suffers from two key flaws.  First, the government focuses on defending

the *order* in which USCIS takes up I-526 petitions, but the crux of Thakrar's claim is a challenge

to the *rate* at which USCIS adjudicates those petitions.  Even if USCIS's ordering system is

perfectly rational, the agency could still be liable if it adjudicates each petition at an unjustifiably slow pace, resulting in unreasonably long overall wait times.[2]

  Second, and more fundamentally, it would be premature at this stage for the Court to accept USCIS's factual representations about its purported rule of reason.  On a motion to dismiss under Rule 12(b)(6), the Court's consideration is limited to "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." Stewart, 471 F.3d at 173.  The government argues that the Court may take judicial notice of "public statements made by USCIS and government officials" that are available on official websites.  Hearing Tr. at 15.  It is true that certain government materials may be judicially noticed and considered on a motion to dismiss.  See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004).  However, "[j]udicial notice cannot be used to circumvent the rule against hearsay and thereby deprive a party of the right of cross-examination on a contested material issue of fact." Wharf, Inc. v. D.C. Wharf Horizontal Reit Leaseholder LLC, No. 15-cv-1198 (CKK), 2021 WL 1198143, at *23 (D.D.C. Mar. 30, 2021) (quoting 29 Am. Jur. 2d Evidence § 140 (2020)).  Accordingly, even if the Court may take notice of the existence of official statements on USCIS's website, the "facts asserted in those [statements] are not automatically admissible for their truth here." Id.; see also Crumpacker v. Ciraolo-Klepper, 715 Fed. App'x 18, 19 (D.C. Cir. 2018) ("The court takes judicial notice of the existence of [court] filings, not the accuracy of any legal or factual assertions made therein."); Sandza v. Barclays Bank PLC,

---

[2] If the rule-of-reason requirement applied only to the order in which the agency prioritizes adjudications, and not to the actual time it takes to dispose of petitions, it would make little sense to say that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the agency's] rule of reason." In re United Mine Workers, 190 F.3d at 549.

151 F. Supp. 3d 94, 113 (D.D.C. 2015) (applying similar reasoning on motion to dismiss).[3] Given its obligation to "accept as true all of the complaint's factual allegations and draw all reasonable inferences in favor of the plaintiffs," Owens, 897 F.3d at 272, the Court cannot assume that the USCIS materials cited by the government accurately describe all the factors that determine the processing times for I-526 petitions.[4]

In sum, the Complaint plausibly alleges that the adjudication of Thakrar's petition has been delayed by USCIS's failure to adhere to a rule of reason for processing times. The government may be able to rebut these allegations at the summary judgment stage by submitting appropriate evidence, such as declarations from agency officials. However, the government's attempt to do so through a motion to dismiss fails. Thus, the first TRAC factor weighs strongly against dismissal.

The remaining TRAC factors are less important, see In re Core Commc'ns, 531 F.3d at 855, but the Court notes that most of them similarly favor Thakrar. For example, under the second TRAC factor, "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the agency's] rule of reason." In re United Mine Workers, 190 F.3d at 549.

---

[3] The Court does not read Desai v. USCIS to hold otherwise. In that case, the court found that it could take judicial notice of materials such as "USCIS regulations, policy statements, and website pages," some of which were cited in the complaint. 2021 WL 1110737, at *1 n.2. However, it appears that the court did not assume the truth of all statements on USCIS's website, but credited them only to the extent that they were explicitly or implicitly incorporated into the complaint. This approach is consistent with Wharf, where the same district judge explained that judicial notice does not provide an end run around the rule against hearsay. 2021 WL 1198143, at *23.

[4] Indeed, plaintiffs specifically allege that USCIS has historically misrepresented its prioritization practices. See Compl. ¶ 58.

As relevant here, "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application[.]" 8 U.S.C. §1571(b). While this provision is nonbinding, it "is certainly an indication of what the legislature had in mind." Uranga v. USCIS, 490 F. Supp. 3d 86, 103 (D.D.C. 2020); accord Thakker, 2021 WL 1092269, at *6. Therefore, the fact that Thakrar filed his petition more than 29 months ago, Compl. ¶ 7, weighs against dismissal.

The third and fifth TRAC factors also tip in Thakrar's favor. These factors "are often considered together, and require the Court to consider Plaintiffs' interests, health, and welfare." Thakker, 2021 WL 1092269, at *7. According to the Complaint, Thakrar faces more than mere economic harm due to the delay in adjudication of his petition. As of the Complaint's filing, Thakrar was living in the U.S. on a student visa but was nearing graduation and struggling to find employment because of his immigration status, leaving him "unable to plan for his future and decide whether to pursue opportunities in the U.S. or abroad." Compl. ¶ 31. Assuming the truth of these allegations, as the Court must, his interests are significant.

The government argues that "[t]he fourth TRAC factor—the effect of granting relief on the agency's competing priorities—weighs heavily in favor of USCIS." Mem. in Support of Mot. to Dismiss at 16. The Court, however, finds this factor essentially neutral. Under the fourth TRAC factor, courts should be wary of finding an unreasonable delay when the effect of the ruling would be to "'impose offsetting burdens on equally worthy' applicants by putting" the plaintiff "'at the head of the queue,' thereby 'mov[ing] all others back one space and produc[ing] no net gain.'" Didban, 435 F. Supp. 3d at 176 (quoting In re Barr Labs., Inc., 930 F.2d 72, 73, 75 (D.C. Cir. 1991)). But here, Thakrar's core theory of the case—supported by plausible allegations—is not that USCIS assigned him the wrong place in line, but that the line as

a whole is moving too slowly due to USCIS's alleged effort to increase processing times.  See

Compl. ¶ 62.  If this contention is true, then the Court could potentially provide relief by

compelling USCIS to increase its processing rate, thus producing "net gain" for I-526 petitioners

as a group.  Didban, 435 F. Supp. 3d at 176.

Finally, the government correctly observes that courts have sometimes upheld

immigration-related agency delays longer than the one Thakrar has experienced.  Mem. in

Support of Mot. to Dismiss at 13-14 (collecting cases).  However, the reasonableness of a delay

"cannot be decided in the abstract, by reference to some number of months or years beyond

which agency inaction is presumed to be unlawful[.]"  Mashpee Wampanoag Tribal Council, Inc.

v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  Instead, it "will depend in large part . . . upon

the complexity of the task at hand, the significance (and permanence) of the outcome, and the

resources available to the agency."  Id.  Here, Thakrar has a plausible claim for relief based on

all the circumstances the Court may consider at the pleading stage, not merely because he has

been waiting for over two years.

**IV.  Conclusion**

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss as to Mr.

Thakrar and grant the Motion as to all other plaintiffs.  A separate Order shall accompany this

memorandum opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  May 25, 2021

11